UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PARNELL MILTON,

        Plaintiff,

v.                                                        Case No. 16-C-684

DEPUTY I. SLOTA, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Parnell Milton, proceeding pro se, brought this 42 U.S.C. § 1983 civil rights action against Defendant Iwona Slota, alleging a violation of his constitutional rights while he was a pretrial detainee at the Milwaukee County Jail. Milton alleges that Slota closed an elevator door on his head and shoulder, which the Court construed at screening as an Eighth Amendment cruel and unusual punishment claim. The Court has jurisdiction under 28 U.S.C. § 1331. This case is now before the Court on Slota's motion for summary judgment (ECF No. 26) and Milton's motion to stay (ECF No. 37). Milton failed to respond to Slota's proposed findings of fact, despite having been provided the proper notice and warnings as to the consequences of failing to do so. Slota's proposed findings of fact are therefore deemed undisputed. Civil L. R. 56(b)(4). For the reasons that follow, Milton's motion to stay will be denied, Slota's motion for summary judgment will be granted, and the case will be dismissed.

## BACKGROUND

At all times relevant, Milton was a Milwaukee County Jail pretrial detainee. On February 26, 2016, Milton was scheduled to appear in court for a hearing relating to his pending criminal case.

Milwaukee County Deputy Sheriffs Iwona Slota and Scott Urbaniak escorted Milton and another detainee to their court hearings. Both detainees were handcuffed and separated by a two foot chain around their waists. Urbaniak walked in front of the detainees while Slota traveled behind them.

In order to reach the "bullpen" where Milton would wait for his case to be called, the parties were required take a freight elevator to the fifth floor. The elevator room possessed only one entrance, with a set of buttons to the right of the elevator. The freight elevator has an inner gate that closes from the top to bottom and locks before the two outside doors close. The bottom of the inner gate is covered by a foam rubber lining that will cause the inner gate to rise if it detects an obstruction before closing. The freight elevator's doors close one of two ways: either the door close button outside the elevator is held for the entirety of time it takes to close the inner gate, or a person on another floor calls the elevator. In the event another person calls the elevator, a loud bell will ring as a warning. On February 26, 2016, the freight elevator was working properly and did not have any outstanding work orders. (ECF No. 31, ¶ 7.)

Upon reaching the elevator room, Urbaniak and the two detainees entered the room while Slota briefly remained outside to allow other deputies to leave the room. Urbaniak instructed the detainees to enter the freight elevator. He noted in his incident report that while the detainees entered the elevator, "the bell to the elevator was ringing." (ECF No. 32-1 at 2.) Milton entered the elevator behind the other detainee. While Milton was entering the elevator, but before he was fully inside it, the inner gate began to close. When Slota noticed the inner gate closing, she shouted to alert him to the gate and pushed the open button in an attempt to stop the gate from closing. The inner gate struck Milton's shoulder, although he remained upright for the entire incident and did not appear to physically react. (ECF No. 28, ¶¶ 57–58.) Slota believes the gate opened immediately

after hitting Milton either because she pressed the call button or because the foam sensor reacted to an obstruction. (*Id.* at ¶ 56.) Milton alleges the inner gate closed only because Slota pushed the door close button. (ECF No. 1 at 2.)

Urbaniak immediately asked Milton twice if he needed medical attention or wanted to be seen by a nurse. Milton refused medical attention and did not appear to be walking with any kind of limp. After riding the elevator to the bullpen, Urbaniak again asked Milton if he wanted any medical attention. Milton instead attended his court hearing. Afterwards, Milton presented to medical staff at the jail at the request of Urbaniak. An x-ray of Milton's shoulder did not reveal any injuries. (ECF No. 30-3.)

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

## ANALYSIS

**A. Motion to Stay**

As an initial matter, Milton moved for a stay of all proceedings for an unspecified length of

time. Milton seeks the stay based on his "inability to properly litigate and solicit counsel." (ECF No. 37.) He alleges that he was separated from Slota's motion for summary judgment and all other paperwork upon his transfer to Redgranite Correctional Institution on January 18, 2017.

Milton has failed to demonstrate cause for a stay. He filed his response to Slota's motion for summary judgment on December 29, 2016. The matter became fully briefed on January 12, 2017—almost a full week before he was transferred. Milton has made no showing that the eventual transfer adversely affected his ability to respond to Slota's motion. Therefore, Milton's motion for a stay is denied.

**B. Motion for Summary Judgment**

Although Milton was originally permitted to proceed at screening on an Eighth Amendment cruel and unusual punishment claim, his claim is more appropriately examined under a Fourteenth Amendment due process analysis. "Pretrial detainees . . . have not been convicted or sentenced and thus are not yet punishable under the law. As such, pretrial detainees couch excessive force claims as violations of their Fourteenth Amendment rights to due process, not infringements on the Eighth Amendment's ban on cruel and unusual punishment." *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The right to due process under the Fourteenth Amendment "provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010) (citing *Lewis*, 581 F.3d at 475).

To succeed on a Fourteenth Amendment excessive force claim, a plaintiff must show the defendant "possess[ed] a purposeful, a knowing, or possibly a reckless state of mind" regarding the action causing the harm allegedly suffered by the plaintiff. *Kingsley v. Hendrickson*, 135 S. Ct.

4

2466, 2472 (2015). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2472–73. However, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Davis v. Wessel*, 792 F.3d 793, 801 (7th Cir. 2015) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). Simply showing that a defendant was negligent is insufficient to state a Fourteenth Amendment due process claim.

Milton alleges that Slota closed the inner gate on his head and shoulder while he was entering the elevator by pressing the door close button. The undisputed facts demonstrate that not only was Slota *not* responsible for the inner gate striking Milton, she actually took steps to prevent the incident from happening. Urbaniak heard the elevator's bells ringing when the detainees began to enter the freight elevator. The presence of alarm bells demonstrates that the elevator was called from another floor. The inner gate automatically begins to close when the elevator is called. Given those facts, it is clear that the inner gate to the freight elevator was closing before Slota pressed any of the elevator door buttons. Milton's claim is further undermined by Slota's actions before he was hit by the elevator door. Slota called out to Milton when she saw the door closing and also hit the door open button. These actions demonstrate an intent to protect Milton from harm—not cause it. Although Slota possibly could have acted more quickly, there is no evidence that she purposefully, knowingly, or recklessly used objectively unreasonable force on Milton. Accordingly, his claim of excessive force against a pretrial detainee must fail.

Additionally, any of Milton's subsequent allegations regarding his medical treatment also fail because his claims do not allege any wrongdoing by Deputy Slota. Urbaniak, not Slota, was the deputy on the scene that asked Milton several times if he needed medical attention. Urbaniak again

5

asked Milton if he needed medical attention after Milton's court hearing and then requested that the jail's medical staff would treat him later that day. Milton does not put forth any evidence that suggests Deputy Slota disregarded Milton's alleged injuries or that he was not offered treatment immediately after the incident. As Milton has not put forth any evidence that Slota disregarded his alleged injuries, summary judgement in favor of Slota on all claims is appropriate. Because Milton has failed to offer any evidence that his constitutional rights were violated, there is no need to address the issue of qualified immunity.

## CONCLUSION

Based on the foregoing analysis, Plaintiff Parnell Milton's motion for a stay (ECF No.37) is **DENIED**, Defendant Iwona Slota's motion for summary judgment (ECF No. 26) is **GRANTED**, and this action is **DISMISSED**.

**SO ORDERED** this  31st  day of January, 2017.

                                                   s/ William C. Griesbach  
                                                   William C. Griesbach, Chief Judge  
                                                   United States District Court